**Antonio C. LOPEZ, Plaintiff,**

v.

**Robert BERGLAND, Secretary, U. S. Department of Agriculture, et al., Defendants.**

**No. C 73 1769 WTS.**

United States District Court, N. D. California.

April 18, 1978.

---

David H. Kirkpatrick, California Rural Legal Assistance, Salinas, Cal., for plaintiff.

Robert S. Mueller, III, Asst. U. S. Atty., Civil Div., San Francisco, Cal., for defendants.

Before WALLACE, Circuit Judge, and SWEIGERT and ORRICK, District Judges.

## MEMORANDUM OF DECISION

SWEIGERT, District Judge.

This is an action challenging the constitutionality of Section 311(a) of the Consolidated Farmers Home Administration Act of 1961 [7 U.S.C. § 1941(a)], which specifically limits the class of persons eligible for farm operating loans under the Act to United States citizens.

The action is presently before the court on the defendants' motion for summary judgment upon an agreed statement of facts.[1]

▇▇▇ Plaintiff[2] contends that this citizenship requirement denies him due process under the Fifth Amendment[3]—both in its

---

1. This action was originally heard by District Judge Lloyd Burke, who ruled that it need not be heard by a three-judge court and that the statute was constitutional. On appeal the Ninth Circuit reversed and remanded with directions to convene a three-judge court to hear and determine plaintiff's claim. 535 F.2d 1170 (9th Cir. 1976) (per curiam). Judge Burke then disqualified himself. The action was reassigned to Judge Sweigert, who then requested the convening of the present three-judge court.

2. Although brought as a class action, plaintiff has never moved for class certification. Accordingly, we dismiss the class action allegations, finding that the named plaintiff's failure to protect the interests of class members by moving for class certification evidences that he will not fairly and adequately protect the interests of the class, as required by Rule 23(a)(4) F.R.Civ.P. *See, East Texas Motor Freight v. Rodriquez,* 431 U.S. 395, 404–05, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977).

3. We assume, for purposes of this opinion, that the statutory provision is of sufficient significance as to be characterized as a deprivation of liberty to plaintiff, within the meaning of the Due Process Clause of the Fifth Amendment. *See, Hampton v. Mow Sun Wong,* 426 U.S. 88, 102, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976).

procedural and substantive equal protection aspects.[4]

The agreed facts are to the effect that in May 1973, plaintiff Lopez, who is not a United States citizen but has been a United States resident for the last thirty-six years and a permanent resident alien for the last twenty years, applied for a farm operating loan under the Act for the purpose of financing the operation of a thirteen acre leased farm. The loan application was denied upon the ground that the plaintiff was not a United States citizen.

The validity of the Congressional determination to limit eligibility for farm operating loans under the Act to United States citizens must be considered in light of several recent Supreme Court decisions involving *federal* discrimination based on alienage.[5]

In *Mathews v. Diaz,* 426 U.S. 67, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976), the Supreme Court, considering a federal statute [42 U.S.C. § 1395o (2)] denying Medicare supplemental insurance coverage to all aliens except permanent resident aliens who had resided in the United States for at least five years, held the statute valid under the Due Process Clause of the Fifth Amendment. The Court held that, even though the Due Process Clause applies to aliens, it does not necessarily require that all aliens be entitled to enjoy all the advantages of citizenship. 426 U.S. at 78, 96 S.Ct. 1883.

"In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens. . . . The fact that an Act of Congress treats aliens differently from citizens does not in itself imply that such disparate treatment is 'invidious.'" 426 U.S. at 79–80, 96 S.Ct. at 1891.

The Supreme Court in *Diaz* further held that the regulation of the relationship between the United States and aliens is committed to the political branches of government, more appropriately left to Congress and the President and being largely immune from judicial inquiry or interference. 426 U.S. at 81–82, 96 S.Ct. 1883. Since "[a]ny rule of constitutional law that would inhibit the flexibility of the political branches of government to respond to changing world conditions should be adopted only with the greatest caution," *Id.* at 81, 96 S.Ct. at 1892, the Court applied what it deemed a "narrow standard of review," *Id.* at 82, 96 S.Ct. 1883, upholding the statute since not "wholly irrational." *Id.* at 83, 96 S.Ct. 1883.

In a companion case, *Hampton v. Mow Sun Wong,* 426 U.S. 88, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976) the Supreme Court, considering a United States Civil Service regulation barring aliens from employment in the federal competitive civil service, held the regulation violative of procedural due process under the Due Process Clause of the Fifth Amendment.[6]

---

**4.** It is settled that the Due Process Clause of the Fifth Amendment encompasses equal protection principles. *E. g., Bolling v. Sharpe,* 347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954); *Schneider v. Rusk,* 377 U.S. 163, 84 S.Ct. 1187, 12 L.Ed.2d 218 (1964); *Weinberger v. Wiesenfeld,* 420 U.S. 636, 638 n.2, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1975); *Buckley v. Valeo,* 424 U.S. 1; 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (per curiam) *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 100, 96 S.Ct. 1895; *Mathews v. DeCastro,* 429 U.S. 181, 182 n. 1, 97 S.Ct. 431, 50 L.Ed.2d 389 (1976). Although the concepts require the same type of analysis, they are not always co-extensive. *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 100, 96 S.Ct. 1895.

**5.** Cases involving *state* discriminations on the basis of alienage do not provide the applicable standard for judicial review of *federal* legisla-

tion discriminating on the basis of alienage, for the federal government, unlike state governments, has broad power over the regulation of immigration and naturalization of aliens. *Mathews v. Diaz, supra,* 426 U.S. at 84–85, 96 S.Ct. 1883; *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 100–101, 96 S.Ct. 1895; *Nyquist v. Mauclet,* 432 U.S. 1, 7 n. 8, 97 S.Ct. 2120, 53 L.Ed.2d 63 (1977).

**6.** The Ninth Circuit had previously found the regulation violative of substantive due process (using an equal protection analysis), holding that federal discriminations on the basis of alienage could be justified only by a compelling national interest. *Mow Sun Wong v. Hampton,* 500 F.2d 1031 (9th Cir. 1974). The Supreme Court affirmed, but on procedural due process grounds not addressed by the Ninth Circuit, not

In *Mow Sun Wong* the Supreme Court held that, when the federal government asserts a national interest as justification for a discriminatory rule (which if adopted by a state would deny equal protection), procedural due process requires that there be a legitimate basis for presuming that the rule was actually intended to serve or further that interest.

The Court held that such a presumption would be reasonable, in the context of a governmental agency promulgating a regulation, if the agency has "direct responsibility for fostering or protecting that interest," 426 U.S. at 103, 96 S.Ct. at 1905, especially if the agency included that asserted interest in a statement of reasons for the enactment of the regulation. However, the Court also noted, in dictum, that, if *the rule were expressly mandated by Congress or the President,* a court might presume that any interest which might rationally be served by the rule did in fact give rise to its adoption. *Id.* at 103, 96 S.Ct. 1895. Furthermore, the Court noted, again in dictum, that if Congress or the President had imposed the civil service citizenship requirement it would be justified by the national interest in providing an incentive for aliens to become citizens and possibly by the interest of providing the President with an expendable bargaining chip for treaty negotiation purposes. *Id.* at 105, 96 S.Ct. 1895.

*Plaintiff's Procedural Due Process Claim*

■ Plaintiff contends that procedural due process bars this court from considering any interests now articulated by the government as being furthered or protected by the present statute—except such interests as were explicitly set forth by Congress in the legislative history or preamble to the statute.

We cannot agree. We find nothing in the Supreme Court decisions in *Diaz* or *Mow Sun Wong* requiring that all such interests to be furthered or protected by the federal legislation be so expressed before this court may consider them. Indeed,

in *Mow Sun Wong* the Court held, albeit in dictum, precisely to the contrary—that a court could presume that any interest which might rationally be served by legislation enacted by Congress did in fact give rise to its adoption.

In reviewing the present statute to see whether it denies due process, we are not limited to those interests to be furthered or protected by the statute which were expressly articulated by Congress. *Flemming v. Nestor,* 363 U.S. 603, 612, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *Richardson v. Simon,* 560 F.2d 500, 505 (2d Cir. 1977); *Mow Sun Wong v. Hampton,* 435 F.Supp. 37, 45 n.9 (N.D.Cal.1977) (on plaintiffs' motion to implement mandate from Supreme Court in *Hampton v. Mow Sun Wong*).

In the case before us, it is clear that the regulation of alien affairs is expressly committed to Congressional authority. Accordingly, finding no denial of procedural due process, we turn to the question of substantive due process raised by plaintiff.

*Plaintiff's Substantive Due Process Claim*

■ Plaintiff claims that he has been denied substantive due process under the equal protection aspect of the Due Process Clause of the Fifth Amendment, contending that this court should apply a standard of strict scrutiny requiring the government to show a compelling national interest to justify the discrimination on the basis of alienage made by the statute under review, citing the Ninth Circuit opinion in *Mow Sun Wong v. Hampton, supra,* 500 F.2d at 1036–41.

■ We cannot agree. Subsequent to the Ninth Circuit opinion in *Mow Sun Wong,* the Supreme Court has made clear that strict scrutiny is required only of *state* discriminations on the basis of alienage—not *federal* ones. *Nyquist v. Mauclet, supra,* 432 U.S. at 7, n.8, 97 S.Ct. 2120; *see, also, Mow Sun Wong v. Hampton, supra,* 435 F.Supp. at 42–43. Moreover, the Supreme Court, even in applying strict scruti-

upon the substantive due process ground relied upon by the Ninth Circuit. 426 U.S. at 103, 96 S.Ct. 1895; *Id.* at 117, 96 S.Ct. 1895 (concurrence); *Id.* at 117–27, 96 S.Ct. 1895 (dissent).

ny to state discriminations on the basis of alienage, no longer requires a compelling state interest to justify the discrimination, but only that the state interest be legitimate and substantial, with the means adopted to achieve or protect the interest being necessary and precisely drawn. *Nyquist v. Mauclet, supra,* 432 U.S. at 7, 97 S.Ct. 2120.

In *Diaz* the Supreme Court applied a rational basis test—finding the statute valid since not wholly irrational—in reviewing a five-year residency requirement for aliens before they could become eligible for Medicare supplemental insurance coverage.

Plaintiff attempts to distinguish *Diaz* from the pending case, contending that *Diaz* was actually decided upon the narrow ground that the discrimination therein was between aliens, not between citizens and aliens.

Although the Supreme Court in *Diaz* did so couch the question for review, 426 U.S. at 80, 96 S.Ct. 1883, we believe the claimed distinction has no real significance. Plaintiff has failed to show any reason why the claimed distinction requires application herein of a different standard of review than that used in *Diaz,* nor can we think of any such reason. We believe that the rational basis test of *Diaz* is equally applicable to the pending case.

One court since *Diaz* has applied this rational basis test of *Diaz* to uphold both a Presidential Order and Congressional statute which clearly discriminated between citizens and aliens. *Santin Ramos v. United States Civil Service Commn.,* 430 F.Supp. 422 (D.P.R.1977) (three-judge court); *see also, United Continental Tuna Corp. v. United States,* 550 F.2d 569, 574–75 (9th Cir. 1977).

One other court, ruling since the decisions in *Diaz* and *Santin Ramos,* has preferred to use a test somewhat more strict than the rational basis test of *Diaz* and *Santin Ramos,* requiring that the interests to be furthered or protected be rationally related to the statute and that the federal government also "demonstrate that the rule substantially furthers important federal inter-

ests in the regulation of immigration and naturalization". *Mow Sun Wong v. Hampton, supra,* 435 F.Supp. at 44.

However, we need not resolve the question of which of these two standards should apply because under either test the statute presently under review is constitutional.

Enough may be gleaned from the nature of the statute here in question, considered in the light of its legislative history and that of its similar predecessor statute, to indicate that Congress contemplated that certain national interests, which could be rationally and substantially served by such a classification, did in fact give rise to, or can be presumed to have given rise to, the adoption of the statute.

Among such interests that could be furthered or protected are that limitation of farm operating loans to United States citizens would promote greater affinity of farmers with the American way of life and, further, would strengthen the American farm economy and the financial condition of family farms operated by United States citizens. *See, Santin Ramos, supra,* 430 F.Supp. at 425. Furthermore, Congress may well have contemplated that the statutory provision would encourage aliens to become United States citizens and, also, provide the President with bargaining chips for treaty negotiation purposes, *Hampton v. Mow Sun Wong, supra,* 426 U.S. at 105, 96 S.Ct. 1883, and, further, would facilitate the judicial collection process in the event that loans might not be timely repaid.

We are satisfied that, under the narrow confines of judicial review of Congressional legislation discriminating on the basis of alienage, the present statute falls well within that area of policy determination committed to the political branches of the federal government. Plaintiff has in effect invited this court to substitute its own judgment for that of Congress in deciding who shall be eligible for farm operating loans from the federal government. We decline the invitation.

Accordingly, finding no denial of due process in either its procedural or substan-

tive equal protection aspects, defendants' motion for summary judgment is hereby granted.